Matter of Hoots v Town of Rochester Zoning Bd. of Appeals (2022 NY Slip Op 03787)

Matter of Hoots v Town of Rochester Zoning Bd. of Appeals

2022 NY Slip Op 03787

Decided on June 9, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 9, 2022

533756
[*1]In the Matter of Allison Hoots et al., Appellants,
v
Town of Rochester Zoning Board of Appeals et al., Respondents.

Calendar Date:April 20, 2022

Before:Aarons, J.P., Pritzker, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Jacobowitz & Gubits LLP, Walden (J. Benjamin Gailey of counsel), for appellants.
Law Office of Mary Lou P. Christiana, Kingston (Mary Lou P. Christiana of counsel), for Town of Rochester Zoning Board of Appeals, respondent.
Gordon & Svenson LLP, Poughkeepsie (Emily B. Svenson of counsel), for Rovika Rajkishun and others, respondents.

Fisher, J.
Appeal from a judgment of the Supreme Court (Cahill, J.), entered January 14, 2021 in Ulster County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review a determination of respondent Town of Rochester Zoning Board of Appeals, among other things, denying petitioners' request for an area variance.
In 2018, petitioners were issued a building permit to construct a two-story guest house and studio on their property situated on a private road in the Town of Rochester, Ulster County. Shortly after receiving the certificate of occupancy, petitioners filed an application with the Town of Rochester Code Enforcement Officer (hereinafter CEO) seeking to use the studio as a "private commercial music studio," a class II home occupation authorized by the Town of Rochester Zoning Law. Although the CEO determined that the proposed use met the definition of a class II home occupation, he denied the application on the basis that the size of the studio exceeded that allowable by the zoning law and, therefore, an area variance was required. Petitioners filed an application for an area variance with respondent Town of Rochester Zoning Board of Appeals (hereinafter the ZBA), contending that a strict application of the zoning law would make it impossible to operate the music studio because 500 square feet would not be enough room for the necessary equipment, instruments and space for soundproofing and musicians.
Thereafter, several neighboring homeowners appealed the CEO's determination to the ZBA, arguing that the CEO's finding that petitioners' proposed use qualified as a class II home occupation was erroneous. Over the course of five months, the ZBA held several public hearings and reviewed evidence concerning the homeowners' appeal and petitioners' variance application. Ultimately, the ZBA found that the studio was improperly found to qualify as a class II home occupation and was better classified as a class III home occupation. Further, after weighing the evidence and balancing the statutory factors, the ZBA denied the request for an area variance due to the substantial nature of the application, the potential effect on the character and environment of the neighborhood and that the hardship was self-created by petitioners. Petitioners commenced this CPLR article 78 proceeding challenging that determination. Supreme Court dismissed the petition, prompting this appeal by petitioners.
When assessing an area variance application, "a zoning board of appeals is required to weigh the benefit to the applicants against the detriment to the health, safety and welfare of the neighborhood or community if the variance is granted, while also considering five statutory factors" (Matter of Wen Mei Lu v City of Saratoga Springs, 162 AD3d 1291, 1293 [2018]; see Town Law § 267-b [3] [b]; Matter of Ifrah v Utschig, 98 NY2d 304, 307-308 [2002]). However, a zoning board of appeals is "not required to justify its determination with [*2]supporting evidence with respect to each of the five factors, so long as its ultimate determination balancing the relevant considerations was rational" (Matter of Feinberg-Smith Assoc., Inc. v Town of Vestal Zoning Bd. of Appeals, 167 AD3d 1350, 1352 [2018] [internal quotation marks and citation omitted]). Further, "[a] zoning board's interpretation of a zoning law or local ordinance is afforded great deference and will only be disturbed if it is irrational or unreasonable" (Matter of Auringer v Town of Woodstock Zoning Bd. of Appeals, 200 AD3d 1444, 1448 [2021] [internal quotation marks, brackets and citations omitted], lv denied ___ NY3d ___ [May 24, 2022]). As a result, it is well established that "[c]ourts may set aside a zoning board determination only where the record reveals that the board acted illegally or arbitrarily, or abused its discretion, or that it merely succumbed to generalized community pressure" (Matter of Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d 608, 613 [2004]; accord Matter of 209 Hudson St., LLC v City of Ithaca Bd. of Zoning Appeals, 182 AD3d 851, 851 [2020]; see Matter of 54 Marion Ave., LLC v City of Saratoga Springs, 175 AD3d 1660, 1661 [2019]).
Upon review, we find that the ZBA's determination was supported by the record and had a rational basis. The record reflects that, over the course of five months and five meetings, the ZBA considered 16 documents related to the administrative appeal of the CEO's determination and another 39 documents related to the variance application prior to making its determination. The ZBA also considered various statements from the parties, both written and at public meetings. As it relates to the classification of the studio, the ZBA rationally determined that the studio should be classified as a class III home occupation. Although, in making this determination, some evidence could be construed in petitioners' favor, the record also contains evidence in favor of the homeowners. For example, although petitioners retained a professional to design and soundproof the studio, in certain circumstances noise could still be heard at the property line. In evaluating the home occupation classifications under the zoning law (see Town of Rochester Zoning Law § 140-19 [A]), the ZBA's further considerations of the size, use, frequency of visitation and traffic were rationally supported by the record and proper in interpreting the zoning ordinance (see Matter of Auringer v Town of Woodstock Zoning Bd. of Appeals, 200 AD3d at 1448; Matter of Sullivan v Board of Zoning Appeals of City of Albany, 144 AD3d 1480, 1482 [2016], lv denied 29 NY3d 901 [2017]). Affording the ZBA "great deference" in interpreting its zoning laws and local ordinances, it cannot be said that its determination was "irrational or unreasonable" (Matter of Auringer v Town of Woodstock Zoning Bd. of Appeals, 200 AD3d at 1448 [internal quotation marks and citations omitted]).
Turning to the application for an area [*3]variance, petitioners' contention that the ZBA did not take into consideration the benefit to petitioners is without merit inasmuch as the ZBA considered and expressly weighed the statutory criteria (see Town Law § 267-b [3] [b]; Matter of Feinberg-Smith Assoc., Inc. v Town of Vestal Zoning Bd. of Appeals, 167 AD3d at 1352; Matter of Fund for Lake George, Inc. v Town of Queensbury Zoning Bd. of Appeals, 126 AD3d 1152, 1154 [2015], lv denied 25 NY3d 1039 [2015]). Nor can it be said that the ZBA succumbed to generalized community pressure where, in this unique case,[FN1] the homeowners live along the private road and have already been affected. As it relates to the specific balancing factors, the ZBA's conclusion that the variance was substantial in nature was both conceded by petitioners at the May 2020 public hearing and supported in the record by proof that the studio exceeded the 500 square-foot area limitation by 56.8%. This conclusion is not irrational, considering that the Court of Appeals has found no abuse of discretion in substantiality where area deficiencies of lower percentages than here, namely 27.3% and 33.3%, were found to weigh against granting a variance (see Pecoraro v Board of Appeals of Town of Hempstead, 2 NY3d at 614). The record also supports the ZBA's determination that the need for the variance was self-created,[FN2] as the studio was constructed prior to applying for the variance and the use listed on the building permit application was different than what was represented to the CEO and, subsequently, to the ZBA in the variance application. Relating to the balancing factors pertaining to an undesirable change in the character of the neighborhood and whether the variance would be a detriment to the community, the record contains several instances where the ZBA carefully considered these factors — particularly at the June 2020 meeting — as well as through evaluating evidence such as photographs and the noise study. Based on the foregoing, we conclude that Supreme Court properly found that the ZBA's determination was rational and supported by the record (see Matter of Wen Mei Lu v City of Saratoga Springs, 162 AD3d at 1293-1294; Matter of Schaller v Town of New Paltz Zoning Bd. of Appeals, 108 AD3d 821, 824 [2013]). To the extent that any of petitioners' arguments have not been specifically addressed, we have reviewed them and found them to be unavailing.
Aarons, J.P., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: As referenced at oral argument, this case is unique because, unlike most variance applications which deal with prospective issues before a project is constructed, here, petitioners' studio has already been completed and is in use. In this case, therefore, specific issues relating to the variance application can be better defined for the ZBA and supported with evidence — notably of sound from petitioners' studio being present, in certain instances, at the property line.

Footnote 2: Although the record contains a reference that petitioners wrote, in a letter to the ZBA and in support of their area variance application, that they "acknowledge that [they] have entirely created the circumstances requiring [them] to apply for an area variance," they explain that this was not intentional and that they would not concede this factor.